# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
In re                                 :    Dist. Ct. No. 12-4376 (LAK)
                                      :
AMR CORPORATION, et al.,              :
                                      :    Ch. 11 Case No. 11-15463 (SHL)
                 Debtors.             :    (Jointly Administered)
------------------------------------------------------------- x
ALLIED PILOTS ASSOCIATION,            :
             Plaintiff-Appellant,     :
             v.                       :    Adv. Proc. No. 12-01094 (SHL)
AMR CORPORATION and                   :
AMERICAN AIRLINES, INC.,              :
             Defendants-Appellees.    :
------------------------------------------------------------- x
```

## BRIEF OF APPELANT ALLIED PILOTS ASSOCIATION

JAMES & HOFFMAN, P.C.
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
Tel: (202) 496-0500
Facsimile: (202) 496-0555

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506 3900
Facsimile: (212) 506 3950

*Counsel for Allied Pilots Association*

## Table of Contents

Jurisdiction ........................................................................................................................1

Issues presented ...............................................................................................................1

Standard of review ...........................................................................................................1

Statement of the case .......................................................................................................2

Statement of facts.............................................................................................................3

Argument ..........................................................................................................................4

I.   Controlling precedent compels a ruling that the pilots' CBA expired by its terms and that post-expiration duties are statutory, not contractual, obligations ...............................................4

    A.   *Manning* requires this Court to honor Section 26.C of the Pilots' CBA ...........................6

    B.   The other cases relied on by the bankruptcy court are not authority for refusal to give effect to Section 26.C of the Pilots' CBA....................................................................11

    C.   The RLA Section 6 duty to maintain the status quo after expiration of a CBA does not create or extend a contract between the parties ...............................................................18

II.   Bankruptcy courts lack jurisdiction under Section 1113 to approve rejection of expired CBAs or of post-expiration status quo conditions imposed by statute ...................................19

    A.   The plain language of Section 1113 confers no authority to reject an expired agreement...............................................................................................................20

    B.   The NMB has exclusive jurisdiction to release the parties from RLA obligations to maintain post-expiration employment conditions .........................................................22

Conclusion ......................................................................................................................25

# Table of Authorities

## Cases

*Air Cargo, Inc. v. Local Union 851*, 733 F.2d 241(2d Cir. 1984) ............................................ 11, 19

*Airline Prof'ls Ass'n v. ABX Air, Inc.*, 400 F.3d 411 (6th Cir. 2005) ........................................ 15

*ALPA v. Eastern Air Lines*, 863 F.2d 891 (D.C. Cir. 1988) ........................................................ 15

*ALPA v. Pan Am. World Airways, Inc.*, 765 F.2d 377 (2d Cir. 1985) ........................................ 17

*ALPA v. United Air Lines, Inc.*, 802 F.2d 886 (7th Cir. 1986) .................................................. 19

*ALPA v. UAL Corp.*, 897 F.2d 1394 (7th Cir. 1990) .................................................................. 16

*Bechtel v. Competitive Technologies, Inc.*, 448 F.3d 469 (2d Cir. 2006) .................................... 20

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) .................................... 23

*Central Virginia Cmty. College v. Katz*, 546 U.S. 356 (2006) ...................................................... 13

*Cohens v. Virginia*, 19 U.S. 264, 5 L. Ed 257 (1821) .................................................................. 13

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) .................................................................. 20-21

*CSX Transp., Inc. v. UTU*, 950 F.2d 872 (2d Cir. 1991) ............................................................ 19

*Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22 (2d Cir. 1988) ..................................... *passim*

*Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142 (1969) ............... 19

*EEOC v. United Air Lines, Inc.*, 755 F.2d 94 (7th Cir. 1985) ................................................ 15, 16

*Falise v. Am. Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999) ........................................................ 20

*Garay v. Slattery*, 23 F.3d 744 (2d Cir. 1994) .......................................................................... 13

*Gloria Mfg. Co. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020 (4th Cir. 1984) ... 21-22

*IAM v. Aloha Airlines, Inc.*, 776 F.2d 812 (9th Cir. 1985) .................................................... 15, 18

*IAM v. NMB*, 930 F.2d 45 (D.C. Cir. 1991) .............................................................................. 24

*IAM v. Reeve Aleutian Airways, Inc.*, 469 F.2d 990 (9th Cir. 1972) ............................... 15, 16, 18

*In re Bennett Funding Grp., Inc.*, 146 F.3d 136 (2d Cir.1998) ................................................. 1-2

*In re Calpine Corp.*, 337 B.R. 27 (S.D.N.Y. 2006) ................................................... 20, 23, 24, 25

*In re Charles. P. Young Co.*, 111 B.R. 410 (Bankr. S.D.N.Y. 1990) ......................................21, 22

*In re Comp III, Inc.*, 136 B.R. 636 (Bankr. S.D.N.Y. 1992).........................................................25

*In re Coast Cities Truck Sales, Inc.*, 147 B.R. 674 (D.N.J. 1992)................................................25

*In re Hostess Brands, Inc.*, No. 12-22052-rdd, slip op. (Bankr. S.D.N.Y. Apr. 17, 2012)......21, 22

*In re Ionosphere Clubs, Inc.*, 139 B.R. 772 (S.D.N.Y. 1992).......................................................14

*In re Ionosphere Clubs, Inc.*, 105 B.R. 761 (Bankr. S.D.N.Y. 1989)............................................14

*In re Lehman Bros. Holdings Inc.*, 11 CIV. 3760 RJS, 2012 WL 1057952
    (S.D.N.Y. Mar. 26, 2012) .....................................................................................................1

*In re Leslie Fay Companies*, 168 B.R. 294 (Bankr. S.D.N.Y. 1994) ............................................22

*In re Northwest Airlines Corp.*, 349 B.R. 338 (S.D.N.Y. 2006).....................................................12

*In re Pesce Baking Co.*, 43 B.R. 949 (Bankr. N.D. Ohio 1984) ....................................................22

*In re Sullivan Motor Delivery, Inc.*, 56 B.R. 28 (Bankr. E.D. Wis. 1985) .....................................22

*In re Tornado Pizza, LLC*, 431 B.R. 503 (Bankr. D. Kan. 2010) ..................................................25

*In re Wills Motors, Inc.*, 133 B.R. 297 (Bankr. S.D.N.Y. 1991) ...................................................25

*Hagans v. Lavine*, 415 U.S. 528 (1974)........................................................................................13

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010)......................................12, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ...............................................20

*Local 808, Bldg. Maint., Serv. & R.R. Workers v. NMB*, 888 F.2d 1428 (D.C. Cir. 1989)...........24

*Manning v. American Airlines*, 221 F. Supp. 301 (S.D.N.Y. 1963) ....................................6, 7, 10

*Manning v. American Airlines*, 329 F.2d 32 (2d Cir. 1964) ................................................. *passim*

*Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 636 F. Supp. 384
    (S.D.N.Y. 1986) ........................................................................................................ 5, 14-15

*Matter of Interco Inc.*, 135 B.R. 634 (Bankr. E.D. Mo. 1992) .....................................................25

*McDaniels v. Sanchez*, 452 U.S. 130 (1981) ................................................................................13

*Miklavic v. USAir*, 21 F.3d 551 (3d Cir. 1994)............................................................................15

*Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984)............................................................25

*Nat'l R.R. Passenger Corp. v. TWU*, 373 F.3d 121 (D.C. Cir. 2004)............................................19

*NMB v. Continental Airlines Corp.*, 50 B.R. 342 (S.D. Tex. 1985) *aff'd per curiam*
    790 F.2d 35 (5th Cir. 1986) ..........................................................................................24

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) .........................20

*Northwest Airlines v. Ass'n of Flight Attendants-CWA (In re Northwest Airlines Corp.)*,
    483 F.3d 160 (2d Cir. 2007)................................................................................. *passim*

*Northwest Airlines*, 33 NMB 195 (2006)......................................................................................24

*Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490 (1989) .............19

*San Rafael Baking Co. v. N. Cal. Bakery Drivers Security Fund*, 219 B.R. 860
    (BAP 9th Cir. 1998)................................................................................................21, 22

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009)..........................................................2

*Shugrue v. ALPA(In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir. 1990) ......................11, 13

*TWA v. Indep. Fed'n of Flight Attendants*, 809 F.2d 483 (8th Cir. 1987), *aff'd mem. by*
    *equally divided Court*, 485 U.S. 175 (1988)....................................................................17

*Webster v. Fall*, 266 U.S. 507 (1925) ...........................................................................................13

*Wong v. HSBC USA, Inc.*, 10 CIV. 0017 WHP, 2010 WL 3154976 (S.D.N.Y. Aug. 9, 2010) ......2

***Statutes***

Bankruptcy Code
    11 U.S.C. § 1113.......................................................................................... *passim*
    11 U.S.C. § 1113(a) ..................................................................................21, 22, 25
    11 U.S.C. § 1113(b) ..................................................................................21, 22, 21
    11 U.S.C. § 1113(c) .................................................................................... *passim*
    11 U.S.C. § 1113(d) ..................................................................................21, 22, 25
    11 U.S.C. § 1113(e) .............................................................................................21
    11 U.S.C. § 1113(f)...................................................................................21, 22, 25

Judicial Code
    28 U.S.C. § 158(a)(1)............................................................................................1

Labor Management Relations Act
    29 U.S.C. § 185....................................................................................................5

Railway Labor Act
    45 U.S.C. § 151, First .........................................................................................24
    45 U.S.C. § 152, First .........................................................................................12

45 U.S.C. § 152, Seventh ........................................................................................12

45 U.S.C. § 155, First ......................................................................................3, 22, 24

45 U.S.C. § 156 ....................................................................................................... *passim*

45 U.S.C. § 157 ..........................................................................................................4

### Rules

Fed. R. Bankr. P. 8002(a) ..........................................................................................2

Fed. R. Bankr. P. 8009 ...............................................................................................1

### Other Authority

1 Collier on Bankruptcy ¶ 3.01[4][c][v], at 3-30 (15th ed. 1999)...............................20

Pursuant to Fed. R. Bankr. P. 8009, the Allied Pilots Association ("APA"), Plaintiff-Appellant, appeals from the Bankruptcy Court's decision and order denying the APA summary judgment and dismissing its complaint against AMR Corporation and American Airlines, Inc. ("American" or "the Company") (collectively, "Debtors" or "Defendants").

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(a)(1) over APA's appeal from the final order of the Bankruptcy Court for the Southern District of New York, Adv. Proc. ECF No. 40, and from the Bankruptcy Court's memorandum of decision setting forth the reasons for that order, Adv. Proc. ECF No. 27 ("Decision").

## ISSUES PRESENTED

1) Given that the most recent collective bargaining agreement between the APA and American expired by its own terms on May 31, 2008, when the contractual conditions for expiration were intentionally met by American's timely service of a notice preventing any subsequent renewal of the contract, may a bankruptcy court refuse to give effect to that contract's express duration and renewal language and, instead, deem APA and American to be party to a current contract that may be assumed or rejected under 11 U.S.C. §1113?

2) Where, as here, the parties' contract expired before the filing of a Chapter 11 petition, does Section 1113(c) of the Code authorize the Bankruptcy Court to approve an application to "reject" that expired contract or the post-expiration working conditions imposed by statute on both American and its pilots as part of the status quo under the Railway Labor Act ("RLA")?

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error.  *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, 11 CIV. 3760 RJS, 2012 WL 1057952 (S.D.N.Y. Mar. 26, 2012) (citing *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138

(2d Cir.1998)).  The dismissal of an adversary proceeding complaint reflects a legal conclusion that is subject to *de novo* review.  *See Wong v. HSBC USA, Inc.*, 10 CIV. 0017 WHP, 2010 WL 3154976 at *4 (S.D.N.Y. Aug. 9, 2010) (citing *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  On review, this Court must accept all factual allegations in the APA's complaint and draw all reasonable inferences in the APA's favor.  *Id.* at *4.

## STATEMENT OF THE CASE

On November 29, 2011, the Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code.  Ch. 11 ECF No. 1.  On February 28, 2012, the APA filed its complaint in this adversary proceeding, Adv. Proc. ECF No. 1 ("Complaint"), seeking a declaratory judgment that (1) there is no comprehensive collective bargaining agreement between the Debtors and the APA that could be "rejected" at this time under 11 U.S.C. § 1113(c); and (2) Section 1113(c) does not permit a Debtor to "reject" those employment conditions of American pilots as to which there is no current collective bargaining agreement.  Complaint at Prayer, ¶ 1.

The Debtors moved to dismiss the APA's Complaint, Adv. Proc. ECF No. 7, which the APA opposed while simultaneously moving for summary judgment.  Adv. Proc. ECF No. 14. On April 20, 2012, the bankruptcy court denied the APA's motion for summary judgment and dismissed its Complaint.  Adv. Proc. ECF No. 27.  The APA filed its notice of appeal on May 3, 2012, Adv. Proc. ECF No. 28, anticipating entry of the bankruptcy court's final order dismissing the Complaint.  Adv. Proc. ECF No. 40 (docketed May 23, 2012).[1]

## STATEMENT OF FACTS

The relevant facts in this case are undisputed.  The APA is the certified collective bargaining representative of approximately 10,000 pilots employed by American.  Decision at 3.

---

[1]  Pursuant to Fed. R. Bankr. P. 8002(a), the APA's notice of appeal is deemed to have been filed on May 23, 2012, following entry of the bankruptcy court's final order.

The most recent collective bargaining agreement ("2003-2008 CBA") between the pilots and American contained a duration clause specifying an initial five-year contract term, coupled with an "evergreen" mechanism enabling year-to-year extensions thereafter unless either party served timely bargaining notice under Section 6 of the RLA:

> This Agreement shall become effective May 1, 2003, except as otherwise dated herein, and shall continue in full force and effect until May 1, 2008, and shall renew itself without change until each succeeding May 1 thereafter, unless written notice of intended change is served in accordance with Section 6, Title 1, of the Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to May 1, 2008, or May 1 of any subsequent year.

Decision at 3-4 (quoting Section 26.C of the 2003-2008 CBA).[2]  The 2003-2008 CBA also contained a provision allowing either party to compel contract negotiations starting as early as two years in advance of the CBA's expiration date: "At any time following May 1, 2006, but prior to May 1, 2008, with sixty (60) days prior written notice by either party, the parties will commence negotiations in accordance with Section 6, Title I of the Railway Labor Act, as amended."  *Id.* at 4 (quoting Section 26.D of the 2003-2008 CBA).  In this case, American elected to serve a Section 6 notice on July 21, 2006, well before the evergreen clause deadline, seeking "negotiations to make changes in rates of pay, rules and working conditions" prescribed in the 2003-2008 CBA.  *Id.* at 4.

Thereafter, the parties pursued negotiations and cooperated in mediation of their labor dispute before the National Mediation Board pursuant to Section 5, First, of the RLA.  *Id.* at 4-5. That process is ongoing, and the NMB has not yet completed its "final required action" under Section 5, First, by making a proffer of arbitration to the parties.  *Id.* at 5 (quoting 45 U.S.C. § 155, First).  As a result, since May 1, 2008, the parties have been operating solely under the objective employment terms and conditions imposed by Section 6 of the RLA, one of the RLA's

---

[2]  Section 26.C does not govern certain supplemental agreements between the parties, which remain in effect by their own terms.  APA does not dispute § 1113(c)'s application to those unexpired agreements.

"status quo" provisions, which provides that the "rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon . . . by the [NMB]." *Id.* at 5 (quoting 45 U.S.C. § 156, internal quotes omitted).[3]

On February 1, 2012, American gave the APA a term sheet it referred to as the "Company's Section 1113(c) Proposal." *Id.* at 5.  On March 27, 2012, the Debtors filed an application under Section 1113 to reject the pilots' 2003-2008 CBA. *Id.* at 6; Chapter 11 ECF No. 2035. The hearing on the Debtors' Section 1113 application and the APA's objections began on April 23 and concluded on May 25, 2012.  Decision at 6.  The bankruptcy court has not yet ruled on the Section 1113 application.

## ARGUMENT

### I. Controlling Precedent Compels a Ruling That the Pilots' CBA Expired by its Terms and that Post-Expiration Duties Are Statutory, Not Contractual, Obligations

Ignoring the specific terms of the CBA's duration-renewal clause and the legal consequence of American's timely notice preventing automatic renewal of that contract, the court below mistakenly concluded that the APA's 2003-2008 CBA did not expire in May 2008 but, instead, remained in effect and merely became "amendable" under the RLA. *Id.* at 13-27. In so holding, the bankruptcy court erroneously conflated voluntary contractual undertakings during the life of an agreement with post-expiration "status quo" statutory mandates, contrary to governing precedent distinguishing the two regimes.  That precedent, including *Manning v. American Airlines,* 329 F.2d 32, 34-35 (2d Cir. 1964), recognizes the parties' freedom of contract and requires the courts to give effect to the specific duration-renewal provision in any given collective bargaining agreement.  As the Second Circuit emphasized in *Derrico v. Sheehan*

---

[3]  On March 8, 2012, the APA also notified the NMB that it would accept a proffer of final and binding arbitration pursuant to Section 7 of the RLA.  Decision at 5 (citing Ex. 4 to the declaration of Neil Roghair, Adv. Proc. No. 15-2).

*Emergency Hosp.,* even though the terms of an expired agreement may "retain legal significance because they define the *status quo*" for purposes of a federal labor statute, the "[r]ights and duties under a collective bargaining agreement do not otherwise survive the contract's termination at an agreed expiration date," and courts must "respect the expiration date chosen by the parties." 844 F.2d 22, 26-27 (2d Cir. 1988).

Thus, where the parties agree that their contract itself continues in full force and effect during bargaining over amendments, the courts must honor that choice of a non-terminable, amendable-only CBA. On the other hand, where, as here, the CBA specifies a fixed duration and its evergreen clause is structured so that timely service of a bargaining notice prevents automatic renewal of the contract itself, the courts must give effect to that equally lawful choice. *See Manning,* 329 F.2d at 34 (recognizing that "automatic renewal was prevented by" timely bargaining notice); *Marine Transp. Lines v. Int'l Org. of Masters, Mates & Pilots*, 636 F. Supp. 384, 387-88 (S.D.N.Y. 1986) (same).

For many purposes, of course, there may be no immediate difference between operating under statutory protection alone, and operating with the "belt and suspenders" protection of both an ongoing contract and a continuing statutory duty to maintain the status quo. But in those circumstances where legal consequences depend on a currently effective contract, the courts must honor the difference between contractual and statutory obligations. *See, e.g., Derrico,* 844 F.2d at 27 ("[A]fter expiration of the CBA there is no contract subject to [29 U.S.C. § 185], and thus "there can be no removal jurisdiction nor preemption" under that statutory provision); *Manning*, 329 F.2d at 34, 35.

As explained below, the bankruptcy court's decision in this case ignored or misread controlling authority. The court relied, instead, on dicta from other cases where the parties did

not litigate or even raise the issue of contract expiration under the RLA, so the courts never ruled on that question.  This Court must correct those errors by application of relevant precedent.

### A.  *Manning* Requires this Court to Honor Section 26.C of the Pilots' CBA

In *Manning v. American Airlines*, the Second Circuit addressed the legal obligations imposed by the RLA after expiration of two separate contracts between the Company and the relevant union.  Despite differences in the two contracts' duration and renewal provisions, the *Manning* court affirmed that *both agreements had expired by operation of their specific terms*, and that the Company's *legal obligations following expiration of those contracts were therefore purely statutory, rather than contractual*.[4]  Proper understanding and application of *Manning's* factual predicate and holding, detailed below, will compel the same conclusion in this case.

1.  The Company and the union in *Manning* were party to a five-year CBA or "basic agreement," covering wages and working conditions, which specified that the CBA would "continue in full force and effect until April 30, 1963, and shall renew itself without change until each successive April 30 thereafter unless written notice of intended change is served in accordance with Section 6, Title I, of the Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to April 30 in any year after April 30, 1962."  329 F.2d at 33.  The parties had also entered into a separate dues "check-off" agreement specifying the same initial five-year term, but with no evergreen clause; instead, the check-off agreement was to "continue in full force and effect until April 30, 1963, and shall be subject to renewal thereafter only by mutual agreement of the parties hereto."  *Id.*

When the Company threatened to discontinue dues check-off upon that expiration date, the district court granted an injunction enforcing the status quo and compelling continuation of

---

[4]  The Court of Appeals considered the status of both agreements in the course of upholding the district court's ruling and rejecting the Company's contractual and statutory arguments.  *Manning,* 329 F.2d at 33-35, *aff'g* 221 F. Supp. 301 (S.D.N.Y. 1963).

dues check-off solely as a statutory, rather than contractual, obligation.  *See Manning*, 221 F.

Supp. at 306 ("An injunction here is to enforce the duty of defendant under the [RLA], not under

the old agreement or any agreement now being imposed by the Court.").  The Second Circuit

affirmed the injunction and its purely statutory basis.  *See Manning*, 329 F.2d at 34-35 (finding

that American was "required to maintain the check-off if, but only if" dues check-off falls within

the statutorily defined status quo under RLA Section 6; reiterating that "what is here involved is

not 'the interpretation or application' of the check-off agreement, which admittedly expired on

April 30, 1963, but the application of § 6 of the Railway Labor Act;" and holding that the

Section 6 status quo does encompass dues check-off).

2.      The *Manning* courts recognized that both the basic agreement and the dues check-off

agreement had expired in accordance with their own distinct contractual provisions, leaving the

parties subject only to the RLA's statutory requirement to maintain the status quo thereafter.

Specifically, the parties' basic CBA had been terminated by Section 6 bargaining notices on

February 28, 1963, s*ee* 221 F. Supp. at 303, which satisfied the 60-day deadline specified in the

evergreen clause and clearly forestalled further renewal of the contract.  *See* 329 F.2d at 34.

Thus, as the Second Circuit explained, any "current effectiveness of the wage and hour clauses

of the basic agreement . . . [was] *due solely to the second sentence of [RLA] § 6, since automatic*

*renewal was prevented*" by the bargaining notice.  *Id.* (emphasis added).

        As for the check-off agreement, its duration provision "need[ed] no interpretation

because it [was] clear on its face": that agreement indisputably expired on April 30, 1963, and

was not further extended by consent or otherwise.  *See* 221 F. Supp. at 304.  The Company's

duty to continue remitting dues after expiration of the check-off agreement therefore rested on

the same purely statutory footing as its duty to maintain wages and hours following expiration of

the basic agreement.  American was obligated to continue remitting union dues if, but only if, the RLA itself imposed such an obligation – that is, "*if, but only if,* this [check-off of union dues] comes within the phrase 'rates of pay, rules, or working conditions'" under Section 6 of the RLA.  329 F.2d at 34 (emphasis added).  Because it construed the statutory term, "working conditions," to include remission of union dues under a check-off agreement, the Second Circuit held that Section 6 did indeed require American to continue remitting union dues following expiration of the check-off agreement.  *Id.* at 35.

3.     Although both contracts in *Manning* had terminated and neither agreement was enforceable *as a contract* after its expiration date, the Company tried to persuade the Court of Appeals that the two agreements' differing duration-renewal provisions implied a difference in the Company's *statutory* obligations after expiration.  Specifically, the Company argued that because the 1958-1963 check-off agreement failed to include the automatic renewal option found in the 1958-1963 basic agreement, RLA Section 6 did not apply after expiration of the check-off agreement.  This Circuit emphatically rejected that contention: "Stated so broadly the argument is wholly without force."  329 F.2d at 34.  Instead, it confirmed that the Company's RLA Section 6 duty to maintain the status quo applied in the same manner after the actual expiration of both agreements, regardless of any differences in the procedures for ending each contract.  *Id.*

In particular, *Manning*  made it clear that terminating a CBA by timely notice preventing self-renewal, as with the Company's 1958-1963 basic agreement, *has the same legal effect* as reaching the stated expiration date of a one-term contract like the 1958-1963 check-off agreement.  Under either scenario, any post-expiration duty to maintain established conditions is an obligation imposed only by statute, not by contract.  As Judge Friendly explained, even "[i]f the basic agreement of 1958 had no automatic renewal clause, § 6 would have nonetheless

8

applied" to require continuation of the statutorily protected employment conditions pending completion of the Section 6 bargaining and mediation processes.  329 F.2d at 34.  That the 1958 CBA in fact contained an evergreen clause and was terminated by timely notice forestalling renewal made no difference, and yielded an identical result:  "Indeed, *the current effectiveness of the wage and hour clauses of the basic agreement . . . is due solely to the second sentence of § 6, since automatic renewal was prevented* by [Section 6 notice]."  *Id.* (emphasis added).

4.      It was in the course of that discussion that Judge Friendly observed that "[t]he effect of § 6 is to prolong agreements subject to its provisions regardless of what they say as to termination."  329 F.2d at 34 (cited in Decision at 14).  That characterization clearly was not a ruling that the RLA prohibits parties from making terminable contracts, or that Section 6 prevents parties from actually terminating such agreements in accordance with their provisions.  Rather, read in context, the quoted statement simply reflects the Second Circuit's conclusion that the legal duty imposed by RLA Section 6 *after termination of a CBA* is the same regardless of whether contract termination occurs by reaching the stated expiration date of a five-year-only agreement, or by service of timely notice forestalling renewal of a five-year terminable agreement containing an evergreen clause.  Nonetheless, the bankruptcy court in the present case mistakenly relied on that remark as a basis for refusing to recognize the expiration of APA's 2003-2008 CBA – which occurred by the very same procedure (timely notice preventing automatic renewal) that terminated the 1958-1963 basic agreement in *Manning*.

Notably, the bankruptcy court here acknowledged *Manning's* holding that American had only a statutory duty, not a continuing contractual obligation, to remit union dues after expiration of the parties' check-off agreement.  Decision at 14.  Yet, despite the district and appellate courts' recognition that RLA agreements can and do expire by their particular terms, and despite

the *Manning* courts' clear distinction between contractual and statutory obligations, the bankruptcy court misread Judge Friendly's comment as expressing a general view that CBAs never expire and cannot be terminated under the RLA. *Id.* Indeed, the bankruptcy court apparently felt bound to follow that categorical view even though it was only dictum, not part of *Manning's* actual holding. *See* Decision at 14 (recognizing that "the *Manning* Court did not make any holding as to the basic agreement, which is not surprising given that the only issue on appeal related to the check-off agreement.").

As demonstrated above, that admitted dictum cannot properly be read as authority for the proposition that Section 6 overrides all contractual duration provisions, so that RLA agreements never expire. To the contrary, the legal rulings in *Manning* were predicated on the fact that both contracts at issue had expired by operation of their terms, and thus the sole basis for compelling the Company's post-expiration remittance of dues with was statutory rather than contractual. *See* 221 F. Supp. at 304, 306; 329 F.2d at 34-35. Judge Friendly's observation about Section 6 was only part of the court's discussion rejecting any purported legal distinction between the purely statutory obligations imposed by RLA Section 6 *after expiration* of a five-year-only contract, on the one hand, and a five-year contract including an evergreen clause, on the other. *Manning*, 329 F.2d at 34. The actual distinction drawn by the *Manning* court is the one that APA invoked in this case – the distinction between the parties' contractual obligations during the stated term of a contract, and the parties' statutory obligations following contract expiration: "[W]hat is here involved is not 'the interpretation or application' of the check-off agreement, which admittedly expired on April 30, 1963, but the application of § 6 of the Railway Labor Act." 329 F.2d at 35.

5.      In short, both the holding and the dictum of *Manning* require this Court to give effect to the particular contractual duration clause in this case, Section 26.C, and to rule that the APA's

2003-2008 CBA has expired pursuant to that provision.  Notably, Section 26.C of the APA's

five-year CBA is worded in the same manner as the evergreen provision of the five-year basic

agreement in *Manning*, such that a Section 6 bargaining notice in advance of a specified deadline

prevents automatic one-year renewal of the agreement.  Here, as in *Manning*, American did in

fact give timely Section 6 notice preventing automatic renewal of the CBA after its stated

expiration date, May 1, 2008.  *See supra* at 3.  Consequently, under the clear terms of Section

26.C this Court must find that the 2003-2008 CBA was no longer in effect as a matter of contract

after May 1, 2008.  Instead, American's post-expiration obligation to maintain the pilots'

previously established working conditions was and still is "due solely to the second sentence of

§ 6" of the RLA.  *Manning*, 329 F.2d at 34.  *See also Derrico*, 844 F.2d at 27 ("[T]he CBA must

be considered defunct upon its expiration for all purposes *except* definition of the *status quo"*);

*Air Cargo, Inc. v. Local Union 851*, 733 F.2d 241, 243 (2d Cir. 1984) (remanding for district

court to "determine the statutory status quo" following the "expiration" of the agreement).

### B.  The Other Cases Relied on by the Bankruptcy Court Are Not Authority For Refusal to Give Effect to Section 26.C of the Pilots' CBA

Instead of following the holding in *Manning*, the bankruptcy court looked to the

purported "reasoning" of the Second Circuit in *Northwest Airlines Corp. v. Ass'n of Flight

Attendants-CWA (In re Northwest Airlines Corp.)*, 483 F.3d 160 (2d Cir. 2007), and *Shugrue v.

ALPA(In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir. 1990).  Decision at 15-17.  But

neither case overruled *Manning* or even reached the question that *Manning* had previously

resolved.  Indeed, in neither case did the parties even raise the issue of contract expiration.  A

detailed review of both cases confirms that they provide no authority for the ruling below.

1.     As the decision below correctly noted, the "issue in *Northwest* was whether, following

the rejection of a collective bargaining agreement under Section 1113, a court may enjoin a

union from striking in response to such rejection." Decision at 15. The Second Circuit resolved that issue by holding that Section 2, First, of the RLA "forbids an immediate strike when a bankruptcy court approves a debtor-carrier's rejection of a collective bargaining agreement that is subject to the Railway Labor Act and permits it to impose new terms, and *the propriety of that approval is not on appeal.*" *Northwest*, 483 F.3d at 164 (emphasis added).[5] In so ruling, the Second Circuit was careful to limit its holding by reserving for another day whether a strike injunction could issue when a party challenged the propriety of a bankruptcy court's order granting relief under Section 1113, *e.g.*, by challenging the bankruptcy court's jurisdiction to issue such an order. Thus, it was necessary to the Second Circuit's analysis in *Northwest* that Section 1113 relief had been approved and that order had not been challenged.

Here, by contrast, the APA has directly challenged the bankruptcy court's authority under Section 1113 to approve rejection of "status quo" working conditions defined by an expired CBA and imposed by the RLA. *See infra* at 19-25. Thus, this case presents the very jurisdictional question that the Second Circuit specifically acknowledged had not been raised in *Northwest*. Consequently, any statements in *Northwest* about contract expiration under the RLA, cited in Decision at 15-16, do "not foreclose consideration of the issue here." *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124-25 (2d Cir. 2010) (deciding whether statute authorizes a cause of action against corporations, where previous decisions assumed so without actually deciding the question).

---

[5]  The court below ignored the Second Circuit's explicit reservation because, in its view, the district court in *Northwest* "specifically considered whether, prior to rejection, the old agreement 'existed by reason of the contract itself or by reason of the invocation of the RLA's status quo provisions, leaving the last valid agreement in place even after its expiration date while new terms are negotiated.'" Decision at 15 (quoting *In re Northwest Airlines Corp.*, 349 B.R. 338, 349 n.4 (S.D.N.Y. 2006)). In fact, the district court in *Northwest* found that question "unclear" on the record before it and had no need to decide the question because the parties did not contest the question but, rather, "apparently proceeded on the theory that it was the terms of the last contract which were in effect and of which the Bankruptcy Court authorized rejection." *Id. See also* Decision at 16 (the "parties [in *Northwest*] did not dispute" the existence of the rejected agreement).

Indeed, it is particularly important for this Court to decide the jurisdictional question raised by the APA because "when questions of *jurisdiction* have been passed on in prior decisions *sub silentio*," courts do not consider themselves bound "when a subsequent case finally brings the jurisdictional issue before" them.  *Id.* (emphasis added by *Kiobel* court) (citing *Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Garay v. Slattery*, 23 F.3d 744, 745 n.2 (2d Cir. 1994) (finding it necessary to address jurisdictional challenge despite prior cases assuming jurisdiction)).  *See also Central Virginia Cmty. College v. Katz*, 546 U.S. 356, 363 (2006) (constitutional question previously assumed by prior courts had to be decided in case where it was squarely presented for decision, based on careful study and reflection with the aid of facts and argument now fully debated) (citing *Cohens v. Virginia*, 19 U.S. 264, 5 L. Ed 257 (1821)); *McDaniels v. Sanchez*, 452 U.S. 130, 140-41 (1981) (same, for statutory question).

2.      The court below also relied on *Ionosphere*, Decision at 17, but that case strays even farther from the point than *Northwest*.  In *Ionosphere*, the Second Circuit held that (i) the automatic stay under Section 362 of the Bankruptcy Code did not apply to a union's grievance over whether the airline's merger triggered labor protective provisions, but (ii) the discretionary stay under Section 105 did apply to a union's civil action to enforce its statutory rights under the status quo provisions of the RLA.  922 F.2d at 991-995, 996.  The parties in *Ionosphere* raised no argument that the duration clause in the union's contract affected the stay analysis or outcome for either of the two proceedings at issue, and the Second Circuit made no mention whatsoever of that duration clause or its effect.  *See generally Ionosphere*, 922 F.2d 984.

Nonetheless, the bankruptcy court here read the Second Circuit to have "held that Section 1113 applied" to a CBA that had "reached its amendable date."  Decision at 17.  The lower court's own citations, *id.* at 17 n.9, however, illustrate the danger of misreading prior decisions as precedent on questions that have merely been assumed rather than contested and decided.  *See supra* at 13.  None of the *Ionosphere* cases cited or analyzed the applicable contract duration clause, and two lower court decisions gave contradictory descriptions of the assumed effect of that clause: the district court noted that the parties' CBA had "*expired* by its own terms on July 1, 1988," *In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 775 n. 2 (S.D.N.Y. 1992) (emphasis added), but the bankruptcy court indicated that the parties' CBA had merely "become *amendable* . . . on July 1, 1988," *In re Ionosphere Clubs, Inc.*, 105 B.R. 761, 762 (Bankr. S.D.N.Y. 1989) (emphasis added).  The apparent contradiction between those two descriptions would have been resolved had a determination as to the precise duration and present status of the contract been necessary.  But because that issue was not presented for decision, and was not analyzed or actually decided by any court presiding over the *Ionosphere* case, all these characterizations must be deemed non-precedential dicta.

3.      Once the dicta in *Northwest* and *Ionosphere* are set aside, it is clear that the holding in *Manning* governs the question of contract expiration here.  As shown above, *Manning* embodies the Second Circuit's and this Court's recognition that judges in each case must give effect to the particular duration provisions of a given contract, including an evergreen clause under which timely notice prevents automatic renewal.  *See Derrico,* 844 F.2d at 27 ("Deference to the collective bargaining process . . . requires us to respect the expiration date chosen by the parties); *Manning*, 329 F.2d at 34 (under evergreen clause worded like Section 26.C here, "automatic renewal was prevented by" timely Section 6 notice); *Marine Transp. Lines,* 636 F. Supp. at 388-

14

89 (timely notice prevented automatic renewal under similar evergreen clause, despite adverse consequences for workers left unprotected by statutory post-expiration status quo).  That same controlling principle, moreover, is followed in other Circuits, where the courts likewise parse contractual duration-renewal clauses and properly distinguish between those provisions that make CBAs terminable and those that create continuing, merely amendable agreements.  *See, e.g., IAM v. Reeve Aleutian Airways,* 469 F.2d 990, 992, 993 (9th Cir. 1972) (CBA with evergreen clause worded like the CBAs in *Manning* and the present case "expired by its own terms on April 1, 1968," and there is "nothing in the Railway Labor Act which extends a contract beyond its termination date");[6] *IAM v. Aloha Airlines,* 776 F.2d 812 (9th Cir. 1985) (relevant CBA expired where its duration clause provided for an initial term with subsequent annual renewals absent timely notice, and timely notice was served).[7]  *Compare EEOC v. United Air Lines*, 755 F.2d 94, 97 (7th Cir. 1985) (duration clause language made a CBA amendable only, in direct contrast to the differently worded provision in *Reeve*).  Thus, no threat is posed to settled labor law by honoring Section 26.C and recognizing that the pilots' CBA, like the basic agreement in *Manning*, expired upon timely notice pursuant to its own terms.  On the contrary, proper respect for precedent and freedom of contract demands this result.

---

[6]  The applicable clause in *Reeve* provided: "This agreement . . . shall continue in full force and effect until April 1, 1968, and shall renew itself without change until each succeeding April 1st thereafter, unless written notice of intended change is served in accordance with Section 6, Title I, of the [RLA] . . . by either party hereto at least sixty (60) days prior to April 1st in any year after 1967."  469 F.2d at 991.

[7]  The court below questioned *Aloha's* authority based on criticism in other cases, Decision at 20-21, but failed to recognize the limited scope of that criticism, which addressed only *Aloha's* holding that procedures for arbitrating minor disputes are no longer available following contract expiration, *Aloha*, 776 F.2d at 816.  *See, e.g*, *Airline Prof'ls Ass'n v. ABX Air*, 400 F.3d 411, 415 (6th Cir. 2005); *Miklavic v. USAir*, 21 F.3d 551, 554 (3d Cir. 1994); *ALPA v. Eastern Air Lines*, 863 F.2d 891, 899 (D.C. Cir. 1988).  None of those critical cases disputed *Aloha's* reading of the CBA's duration clause or its conclusion that the CBA in that case had in fact expired.  *E.g., Eastern*, 863 F.2d at 899 (the "expiration of the [CBA] tells us little or nothing about the track for which a dispute is suitable.").  Rather, they held that minor disputes can be arbitrated even *after a CBA expires*, because the "provisions contained in the[] now expired contracts . . . serve as evidence of settled past practice."  *Id.*  Any difference on that point thus leaves undisturbed *Aloha's* interpretation of the contractual duration clause and the court's manifestly correct conclusion that the CBA expired by its own terms after timely notice.

4.     While noting the cases discussed above, the decision below mistakenly ignored the careful distinctions they demonstrate between contract clauses that create terminable agreements and clauses that make contracts amendable-only.  Judge Posner's instructive opinion in *EEOC v. United Air Lines* highlights that distinction and reinforces APA's position here.  The duration clause in *EEOC,* which typifies amendable-only contracts, provided that the CBA between United and its pilots "shall remain in full force and effect through November 1, 1978, and thereafter shall be subject to change by service of notice as provided for in Section 6 of the RLA."  755 F.2d at 97.  As the court explained, that particular formulation makes the contract itself remain in effect indefinitely, while being "subject to amendment in accordance with specified procedures" following timely notice.  *Id.*  Thus, the November 1, 1978, date in the UAL contract was not "a termination date at all; it [was] the date before which no changes [could] be made."  *Id.* at 99.  *Accord ALPA v. UAL Corp.*, 897 F.2d 1394, 1398 (7th Cir. 1990) (construing a provision "identically worded" to the one in *EEOC* as creating an amendable-only agreement).  Judge Posner specifically distinguished this amendable-only duration clause from the differently worded evergreen provision at issue in *Reeve*, which created a terminable contract by the same mechanism (timely notice prevents automatic renewal) as the basic agreement in *Manning* and the pilots' CBA in this case.  As noted above, the clause in *Reeve* exemplifies such terminable agreements: the contract was to "continue in full force and effect *until*" a specified date and "renew itself without change until each succeeding [anniversary date] thereafter, *unless*" Section 6 notice was timely served.  As Judge Posner correctly recognized, that formulation clearly caused the contract itself to "lapse[] . . . after timely notice was given."  755 F.2d at 99 (citing *Reeve,* 469 F.2d at 991).[8]

---

[8]  The bankruptcy court also mistakenly invoked an Eighth Circuit decision, involving a duration clause that did not fit neatly into either the terminable or amendable classification, as precedent flatly rejecting "the argument that the

5.      Finally, relevant authority fails to support the bankruptcy court's suggestion that a CBA cannot expire unless its duration clause includes the key word, "terminate," or synonymous language.  *See* Decision at 21-22.  The Second Circuit, for example, has identified at least three different duration clauses causing RLA agreements to expire, none of which used the word "terminate" or "expire."  *See Manning*, 329 F.2d at 33, 34 (check-off agreement expired where duration clause provided that the agreement would "continue in full force and effect until [date], and shall be subject to renewal thereafter only by mutual agreement of the parties hereto"); *Manning*, 329 at 34 (basic agreement expired "since automatic renewal was prevented by the openers," where duration clause provided that the agreement would "continue in full force and effect until [date] and shall renew itself without change until each successive [anniversary] unless" timely notice is served); *ALPA v. Pan Am. World Airways,* 765 F.2d 377, 379, 382 (2d Cir. 1985) (temporary concessions expired by terms of duration clause, which provided that the concessionary agreement would "remain in effect only until [date], without the right of either

---

CBA had expired by its own terms. . . ."  Decision at 18, citing *TWA v. Indep. Fed'n of Flight Attendants*, 809 F.2d 483 (8th Cir. 1987), *aff'd mem. by equally divided Court*, 485 U.S. 175 (1988).  In fact, the courts in *TWA* had carefully parsed the duration-renewal provision, in conjunction with the specific bargaining notice, in order to give meaning to all of the provision's terms.  Specifically, the *TWA* duration-renewal clause provided: "Except as otherwise specified in this Agreement, this *entire* Agreement shall be effective August 1, 1981 [and] shall remain in effect until July 31, 1984, and thereafter shall renew itself without change for yearly periods unless written notice of intended change is served in accordance with Section 6 . . . of the Railway Labor Act by either party hereto, at least 90 days prior to the renewal date in each year."  809 F.2d at 490 (emphasis added).  To give the term "entire" an "operative purpose," the Eighth Circuit adopted the lower court's reading of the clause, under which timely service of notice "prevent[ed] total renewal" but allowed "partial renewal" of those terms that were the subject of the notice. *Id.*  That is, the courts read this clause to terminate those particular terms encompassed in the parties' Section 6 notices, while allowing other omitted contract terms to continue in effect until either party served notice of intent to change those previously un-noticed terms.  *Id.* at 485-86, 490.

        Unlike the duration clause at issue in *TWA*, no language in Section 26.C of the APA's CBA makes the "entire" Agreement effective for a certain period of time, and thus no language could be read to allow *partial* renewal or termination.  Moreover, even if Section 26.C could be construed to permit partial renewal notwithstanding its plain language, American's Section 6 notice in this case was so broad as to encompass all the terms and conditions of employment subject to Section 26.C.  *See supra* at 3; Ex. 2 to the declaration of Neil Roghair, Adv. Proc. No. 15-2.  Thus, by the terms of Section 26.C and American's decision to serve a *comprehensive* Section 6 notice, all the employment conditions previously governed by Section 26.C must be deemed to have expired, even under the unusual *TWA* rationale.

party to renew it or any portion thereof nor is [sic] its terms to continue under Section 6 of the [RLA] beyond January 1, 1985, except by mutual agreement"). As noted above, the Seventh and Ninth Circuits have likewise agreed that CBAs with evergreen language like that in *Manning* and the APA's Section 26.C – and without words like "expire" or "terminate" – will expire by operation of timely notice preventing automatic renewal. *See supra* at 15-16. Thus, there is simply no basis for asserting that the parties had to recite a magic word such as "terminate" or "expire" in order for the APA's 2003-2008 CBA to expire as a matter of contract.[9]

### C. The RLA Section 6 Duty to Maintain the Status Quo After Expiration of a CBA Does Not Create or Extend a Contract Between the Parties

Compounding the errors detailed above, the bankruptcy court's decision mistakenly conflates an airline's *contractual* obligation to maintain certain rates of pay, rules, or working conditions with its *statutory* obligation to do so. *See* Decision at 14, 18. The law in this Circuit requires, on the contrary, that courts honor the distinction between obligations under a live, current contract and statutory status quo obligations defined by reference to an expired agreement. *See Derrico,* 844 F.2d at 26-27 (Though terms of an expired CBA "retain legal significance because they define the status quo," the parties' "[r]ights and duties under a collective bargaining agreement do not otherwise survive the contract's termination at an agreed termination date."); *Manning*, 329 F.2d at 34 (working conditions remained in force "due solely to" RLA Section 6 once the basic CBA expired); *id.* at 35 (duty to remit union dues arose "if, but only if" Section 6 required it, because no current contract so required).

---

[9]  In  unsuccessful effort to portray the pilots' CBA as an amendable-only contract, the court below ignored or dismissed cases involving terminable CBAs containing evergreen clauses identical or virtually identical to Section 26.C – including *Manning, Reeve* and *Aloha* – and, instead, invoked inapplicable authority involving significantly different contract language. But the decision identifies no case ruling that the actual language in Section 26.C creates an amendable-only contract. Even the court's reference to an RLA treatise describing and characterizing an allegedly "similar," "typical" clause misses the mark: the quoted language of the purportedly "typical clause, at least in the published decisions," is not the same formulation used in the APA's Section 26.C, or in *Manning, Reeve* and *Aloha.* Decision at 22.

That legal distinction is significant, not metaphysical.  While contracts survive only as long as parties assent to them, *Derrico,* 844 F.2d at 27, statutory obligations, such as those under Section 6 of the RLA, can bind parties to continue performing even after they no longer assent. *See Manning*, 329 F.2d at 34-35.  Under the RLA, moreover, the substance of the Section 6 status quo is not limited to contractual undertakings but can also include working conditions that were *not* covered in the expired CBA.  *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 153 (1969) ("The status quo extends to those actual, objective working conditions out of which the dispute arose, and clearly these conditions need not be covered in an existing agreement.").  *Accord Air Cargo*, 733 F.2d at 246.[10]

Most important, where jurisdiction hinges on the existence of a contract, the Second Circuit has made it clear that the status quo imposed by law, although defined by an expired agreement, will not supply the required contract itself.  *Derrico,* 844 F.2d at 27.  In this case, as discussed below, the distinction between a current contract and post-expiration statutory duties goes directly to the bankruptcy court's jurisdiction under Section 1113 of the Code. Accordingly, this Court must correct the bankruptcy court's threshold legal errors in failing to give effect to Section 26.C of the pilots' CBA and in treating the RLA's post-expiration statutory mandate as supplying a current contract for purposes of Section 1113.

## II. Bankruptcy Courts Lack Jurisdiction Under Section 1113 to Approve Rejection of Expired CBAs or of Post-Expiration Status Quo Conditions Imposed by Statute

Having erroneously concluded that the pilots' 2003-2008 CBA did not expire, the court

---

[10]  Conversely, the post-expiration status quo may not encompass all provisions of an expired contract because RLA Section 6 of the RLA excludes management prerogatives and other subjects of bargaining that are considered non-mandatory or permissive, as well as personnel such as trainees and managers not protected by the RLA, but which parties can and often do include in their contracts.  *See, e.g., Pittsburgh & Lake Erie R.R. v. Ry. Labor Executives' Ass'n,* 491 U.S. 490, 509 (1989) (decision to close business entirely is a "management prerogative" not covered by Section 6); *Nat'l R.R. Passenger Corp. v. TWU,* 373 F.3d 121, 126 (D.C. Cir. 2004) (same for decision to curtail or eliminate operations); *CSX Transp., Inc. v. UTU,* 950 F.2d 872, 878-80 (2d Cir. 1991) (same for sale of rail lines); *ALPA v. United Air Lines,* 802 F.2d 886, 902, 911-13 (7th Cir. 1986) (trainees who have not yet performed work under a carrier's supervision are not "employees" under the RLA, so trainee terms not subject to Section 6).

below did not decide whether it has jurisdiction under Section 1113 to approve rejection of an

expired agreement.  Likewise, it did not decide whether Section 1113 empowers it to relieve

American of statutory obligations to maintain certain post-expiration working conditions.  The

plain language of Section 1113, as persuasively construed, demonstrates that bankruptcy courts

lack jurisdiction to approve rejection of an expired agreement.  Moreover, nothing in the Code

authorizes courts to relieve debtors of their statutory or regulatory obligations to continue terms

and conditions originally established by contract.  *See In re Calpine Corp.*, 337 B.R. 27, 36

(S.D.N.Y. 2006).  This Court should therefore proceed to enter judgment for the APA on these

points so as to ensure proper application of Section 1113 in the pending reorganization.

### A. The Plain Language of Section 1113 Confers No Authority to Reject an Expired Agreement

1.     Federal courts are courts of limited jurisdiction, with only those powers "authorized by

Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The Constitution erects a presumption against the exercise of federal judicial authority, "and the

burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.*  Even when

the exercise of federal judicial power would be "desirable or expedient, jurisdiction does not lie

absent statutory authority."  *Bechtel v. Competitive Technologies, Inc.*, 448 F.3d 469, 471 (2d

Cir. 2006) (Jacobs, J.) (internal quotations omitted).  Because bankruptcy judges lack the

protections of Article III of the Constitution, bankruptcy courts' jurisdiction is even more

"severely cabined" than that of district courts.  *Falise v. Am. Tobacco Co.*, 241 B.R. 48, 56

(E.D.N.Y. 1999) (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50,

89-90 (1982) (Rehnquist, J., concurring); 1 Collier on Bankruptcy ¶ 3.01[4][c][v], at 3-30 (15th

ed. 1999) ("If a district court is without jurisdiction, '[p]erforce . . . [the case] cannot reside in the

bankruptcy court.'")).  Consequently, the jurisdiction of bankruptcy courts "is grounded in, and

limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

2.     While the court below failed to decide its jurisdiction under Section 1113 to approve rejection of expired agreements, Judge Drain of the bankruptcy court in this same District recently reached that very question and concluded that the term "agreement," under the plain language of Sections 1113(a)-(d) and 1113(f), refers only to unexpired collective bargaining agreements. *See In re Hostess Brands, Inc.*, No. 12-22052-rdd, slip op. at 188-189 (Bankr. S.D.N.Y. Apr. 17, 2012), attached as Exhibit 3 to Adv. Proc. ECF No. 31.  In so ruling, the *Hostess* court distinguished the language of those subsections of Section 1113 from the language of Section 1113(e), which authorizes interim emergency relief in periods "when the collective bargaining agreement continues in effect. . . ." *Id.* at slip op. at 182-83, 186 (quoting 11 U.S.C. § 1113(e)).  Under that analysis, the phrase, "a period when the collective bargaining agreement continues in effect," includes a period in which the CBA has expired by its own terms but nonetheless continues to bind the debtor by operation of law rather than by contract. *Id.* Standing alone, however, the term "collective bargaining agreement" cannot be stretched so far: it refers only to an agreement that is in place as a matter of contract. *Id.* at 186-87.

3.     The plain language analysis of *Hostess* accords with the better reasoned authority construing Section 1113, including the only authority in this district. *See, e.g., In re Charles. P. Young Co.*, 111 B.R. 410, 413 (Bankr. S.D.N.Y. 1990) ("Rejection of a collective bargaining agreement pursuant to § 1113(b) and (c) is a moot issue if the agreement expires by its own terms and before the bankruptcy court has a hearing on rejection."); *San Rafael Baking Co. v. N. Cal. Bakery Drivers Security Fund*, 219 B.R. 860, 863, 865-66 (BAP 9th Cir. 1998) ("No authority vests in the bankruptcy court, and the bankruptcy court lacks subject matter jurisdiction" to authorize rejection of expired CBAs); *Gloria Mfg. Co. v. Int'l Ladies' Garment*

*Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984); *In re Sullivan Motor Delivery, Inc.*, 56

B.R. 28, 29-30 (Bankr. E.D. Wis. 1985); *In re Pesce Baking Co.*, 43 B.R. 949, 957 (Bankr. N.D.

Ohio 1984) (same). *Accord In re Leslie Fay Companies*, 168 B.R. 294, 300 (Bankr. S.D.N.Y.

1994) ("Collective bargaining agreements are simply *executory contracts* with a special

provision governing their assumption or rejection by the debtor or the trustee in a Chapter 11

case.") (internal quotation omitted, emphasis added). Moreover, this line of authority

demonstrates that the question of Section 1113's application to expired agreements is

jurisdictional. *See Hostess*, slip op. at 189-91; *Charles P. Young*, 111 B.R. at 413; *San Rafael*

*Baking*, 219 B.R. at 863, 865-66.[11]

 Thus, the limited jurisdiction conferred by Section 1113(a)-(d) and (f) to approve

rejection of labor agreements extends only to those unexpired agreements that are in effect by

their own terms. It does not extend to CBAs that have expired by their own terms, regardless of

whether any other federal statute requires the debtor to maintain previously established working

conditions following expiration of the CBA.

**B. The NMB Has Exclusive Jurisdiction to Release the Parties From RLA Obligations to Maintain Post-Expiration Employment Conditions**

 Because nothing in the Code confers jurisdiction on the bankruptcy court to approve

rejection of the expired 2003-2008 CBA, *see supra* at 20-22, American remains subject to the

status quo provisions of Section 2, Seventh, and Section 6 of the RLA until such time as the

NMB "induce[s] the parties to submit their controversy to arbitration" and thereby releases them

from their status quo obligations after a cooling off period. 45 U.S.C. § 155, First.[12] In this

---

[11] This analysis likewise comports with black letter law holding that debtors may not assume or reject expired agreements under Section 365, *see* n.13, *infra*, a principle not disputed by American or the court below. The decision below surveyed other Section 1113 cases relied upon by the Debtors, Decision at 24 n.14 (collecting cases), but correctly found that none of those cases binds this court. *Id.* at 24-25. Indeed, none arose in this Circuit.

[12] Indeed, under *Northwest*, bankruptcy law relieves airline carriers of their status quo obligations under the RLA

regard, American is no different from any other debtor that enters Chapter 11 encumbered by statutory or regulatory obligations, including statutory obligations having their genesis in voluntary agreements.  The Code neither reduces nor expands such obligations of the debtor.

1.      For example, in *Calpine Corp.*, the debtor, a publicly regulated utility, sought to reject several wholesale power agreements under Section 365.  337 B.R. at 30.  Prior to its bankruptcy petition, the debtor had filed those agreements with the Federal Energy Regulatory Commission ("FERC") as required by the Federal Power Act ("FPA").  *Id.*  Under the FPA, FERC had exclusive authority to modify the terms established by those agreements, which became the "equivalent of a federal regulation" upon filing and whose legal authority emanated "not from the private law of contract, but [from] FERC itself."  *Id.* at 33 (internal quotations omitted) (citing *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004)).  Thus, "altering the rates, terms, conditions, or duration of the contracts would require FERC involvement and approval."  *Id.*

So, too, here.  American is currently subject to a statutory obligation not to alter the wages or working conditions established by the expired 2003-2008 CBA because, in accordance with RLA Section 6, 45 U.S.C. § 156, the parties timely invoked the NMB's mediation services.  *See supra* at 3.  As with the filing of the wholesale energy contracts in *Calpine*, the invocation of the NMB's services triggered statutory status quo obligations that currently bind American.  Those obligations now flow not from any private, voluntary contract but from the RLA itself, administered by the NMB as the designed federal agency.

2.      Like the FERC's "exclusive jurisdiction and regulatory authority over wholesale power contracts," *Calpine*, 337 B.R. at 36, the NMB is vested with plenary jurisdiction to determine

---

only through abrogation of an agreement pursuant to an order granting relief under Section 1113 of the Code.  *See Northwest*, 483 F.3d at 173.  As shown above, no such order can issue here.  *See supra* at 20-22.  Those statutory obligations must therefore remain in place until released by the NMB.

when to authorize airline carriers and unions to alter the status quo established by their collective bargaining agreements.  It does so by determining, in its sole discretion, when to "induce the parties to submit their controversy to arbitration."  45 U.S.C. § 155, First.  Because the parties are freed to alter their agreements through self-help thirty days following this "release," the NMB's authority to grant that release is the chief "'coercive tool essential to bringing the parties to conciliation.'"  *IAM v. NMB*, 930 F.2d 45, 47 (D.C. Cir. 1991) (quoting *Local 808, Bldg. Maint., Serv. & R.R. Workers v. NMB*, 888 F.2d 1428, 1438 (D.C. Cir. 1989)).  *See also*, *Local 808*, 888 F.2d at 1443 ("The Board's withholding of the proffer is a 'crucial' tool for encouraging compromise and settlement.").  Judicial review of the NMB's plenary authority to release the parties to self-help "is one of the narrowest known to the law."  *Id.* at 48 (internal quotations omitted).

Moreover, just as FERC has continuing jurisdiction in the bankruptcy context, *Calpine*, 337 B.R. at 33, the NMB has continuing jurisdiction to mediate disputes and administer the RLA during bankruptcy.  *See* 45 U.S.C. § 151, First (defining "carrier" to include "any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any . . . 'carrier'"); *Northwest*, 483 F.3d at 176 (noting that "the assistance of the NMB [during an airline's bankruptcy] is at least available on consent of the parties"); *NMB v. Continental Airlines Corp.*, 50 B.R. 342, 351 (S.D. Tex. 1985) (NMB had authority to conduct representation proceedings with respect to employees employed by bankrupt carrier), *aff'd per curiam* 790 F.2d 35 (5th Cir. 1986); *Northwest Airlines*, 33 NMB 195 (2006) (same).

3.      The critical question for this Court, therefore, is whether and to what extent any Bankruptcy Code provision limits the NMB's exclusive jurisdiction, as a federal agency, to determine when to release the parties from their status quo obligations.  *See Calpine*, 337 B.R. at

24

33-36.  Section 1113 admittedly limits that exclusivity in one respect, by authorizing rejection of *unexpired* CBAs.  *See* 11 U.S.C. §§ 1113(a)-(d), (f).  As shown above, however, that authority does not extend to *expired* agreements.  *See supra* at 20-22.[13]  Thus, because the pilots' CBA in this case has expired by its terms, *see supra* at 3-11, the NMB's exclusive jurisdiction over the parties' statutory status quo obligations is undiminished, and "the bankruptcy court's authority cannot be exercised so as to interfere with the jurisdiction of a federal agency acting in its regulatory capacity."  337 B.R. at 35.  As this Court admonished in *Calpine*, American "cannot achieve in Bankruptcy Court what neither it, nor any other party in this case, nor any other [airline subject to the RLA] could do without seeking [NMB] approval: cease performance of" the rates of pay, rules, and working conditions it must maintain under Section 6 of the RLA "in the hopes of getting a better deal."  *Id.* at 36.

## CONCLUSION

For all the reasons set forth above, this Court should reverse the bankruptcy court's Decision and Final Order below and direct entry of declaratory judgment for APA.

Respectfully submitted,

Edgar N. James*
Kathy Krieger*
David P. Dean*
Darin M. Dalmat*
Daniel M. Rosenthal*
**JAMES & HOFFMAN, P.C.**
1130 Connecticut Ave., N.W., Suite 950
Washington, DC 20036
Tel: (202) 496-0500

/S/ EVAN GLASSMAN_____
Filiberto Agusti
Evan Glassman
Joshua R. Taylor*
**STEPTOE & JOHNSON LLP**
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506 3900
Facsimile: (212) 506 3950

---

[13]  Section 365, likewise, authorizes assumption and rejection of only unexpired contracts.  *See In re Comp III, Inc.*, 136 B.R. 636, 639 (Bankr. S.D.N.Y. 1992) (Section 365 "does not authorize bankruptcy court to reach beyond the veil of the petition to reinstate" an expired contract); *In re Wills Motors, Inc.*, 133 B.R. 297, 300 (Bankr. S.D.N.Y. 1991); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212, 1213 (7th Cir. 1984) ("If a contract has been terminated pre-bankruptcy there is nothing left for the debtor to assume," and the "filing of the chapter 11 petition cannot expand debtor's rights. . . ."); *In re Tornado Pizza, LLC*, 431 B.R. 503, 510-11 (Bankr. D. Kan. 2010); *Matter of Interco Inc.*, 135 B.R. 634, 635-66 (Bankr. E.D. Mo. 1992); *In re Coast Cities Truck Sales, Inc.*, 147 B.R. 674, 677 (D.N.J. 1992).

*Application for admission *pro hac vice* pending

*Attorneys for the Allied Pilots Association*

DATED: June 19, 2012