**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re                                              :
                                                   :
                                                   :
AMR CORPORATION, et al.,                           : Ch. 11 Case No. 11-15463 (SHL)
                                                   : (Jointly Administered)
                                                   :
             Debtors.                              :
---------------------------------------------------------x
ALLIED PILOTS ASSOCIATION,                         :
             Plaintiff-Appellant,                  : Case No. 12-4376 (LAK)
                          v.                       :
AMR CORPORATION and                                :
AMERICAN AIRLINES, INC.,                           :
             Defendants-Appellees.                 :
---------------------------------------------------------x


**ANSWERING BRIEF OF AMR CORPORATION AND AMERICAN AIRLINES, INC.**
**IN OPPOSITION TO APPEAL OF ALLIED PILOTS ASSOCIATION**

*Harvey R. Miller*            WEIL, GOTSHAL & MANGES LLP
*Stephen Karotkin*            767 Fifth Avenue
*Alfredo R. Pérez*            New York, New York 10153
*Lawrence J. Baer*            Telephone: (212) 310-8000
        *Of Counsel*          Facsimile: (212) 310-8007

*John J. Gallagher*           PAUL HASTINGS LLP
*Neal D. Mollen*              875 15th Street, N.W.
*Margaret H. Spurlin*         Washington, DC 20005
        *Of Counsel*          Telephone: (202) 551-1700
                              Facsimile: (202) 551-1705

                              *Attorneys for AMR Corporation and*
                              *American Airlines, Inc. - Appellees*

# TABLE OF CONTENTS

**Page**

Introduction and Summary of the Argument ............................................................... 1

Issue Presented .......................................................................................................... 3

Standard of Review on Appeal .................................................................................. 3

Statement of the Case and of the Facts ..................................................................... 3

Argument .................................................................................................................... 6

    I.      Under Controlling Precedent, RLA Collective Bargaining Agreements Do Not Terminate Until the Act's Bargaining Procedures Are Exhausted ................ 6

    II.      Cases Decided under the NLRA Are Not Instructive ........................................ 15

Conclusion ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accurate Die Casting Co.*,
    292 N.L.R.B. 982 (1989) ....................................................................................15

*Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*,
    863 F.2d 891 (D.C. Cir. 1988)...........................................................................14

*Air Line Pilots Ass'n, Int'l v. Pan Am. World Airways, Inc.*,
    600 F. Supp. 746 (E.D.N.Y. 1985) ......................................................................5

*Alaska Airlines v. Int'l Ass'n of Machinists and Aerospace Workers*,
    2005 WL 1330976 (W.D. Wash. June 2, 2005).................................................14

*Baraket v. Holder*,
    632 F.3d 56 (2d Cir. 2011)...................................................................................8

*Bhd. of Ry. & S.S. Clerks v. Fla. E. Coast Ry.*,
    384 U.S. 238, 86 S.Ct. 1420 (1966)...................................................................13

*In re Charles P. Young Co.*,
    111 B.R. 410 (Bankr. S.D.N.Y. 1990)...............................................................15

*Consol. Rail Corp. v. Bhd. of Maint. of Way Employees*,
    792 F.2d 303 (2d Cir. 1986).................................................................................2

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*,
    491 U.S. 299, 109 S.Ct. 2477 (1989).................................................................14

*Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*,
    396 U.S. 142, 90 S.Ct. 294 (1969).......................................................................2

*EEOC v. United Air Lines*,
    755 F.2d 94 (7th Cir. 1985) ..........................................................................5, 13

*IAM v. Aloha Airlines*,
    776 F.2d 812 (9th Cir. 1985) .............................................................................14

*IAM v. Reeve Aleutian Airways*,
    469 F.2d 900 (9th Cir. 1972) .............................................................................14

*In re Ionosphere Clubs, Inc.*,
    922 F.2d 984 (2d Cir. 1990).............................................................9, 10, 11, 14

*In re Karykeion, Inc.*,
    435 B.R. 663 (Bankr. C.D. Cal. 2010)...............................................................15

*Manning v. American Airlines, Inc.*,
221 F. Supp. 301 (S.D.N.Y. 1963)..................................................................12

*Manning v. American Airlines, Inc.*,
329 F.2d 32 (2d Cir. 1964)...............................................................1, 10, 11, 12

*Miklavic v. USAir, Inc.*,
21 F.3d 551 (3d Cir. 1994)...............................................................................14

*In re Northwest Airlines Corp.*,
349 B.R. 338 (S.D.N.Y. 2006)......................................................................8, 16

*Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA (In re Northwest Airlines)*,
483 F.3d 160 (2d Cir. 2007)................................................................... passim

*In re San Rafael Baking Co.*,
219 B.R. 860 (9th Cir. BAP 1998)....................................................................15

*Sinclair Refining Co. v. Atkinson*,
370 U.S. 195, 82 S.Ct. 1328 (1962)..................................................................16

*In re Sullivan Motor Delivery, Inc.*,
56 B.R. 28 (Bankr. E.D. Wisc. 1985) ...............................................................15

*Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*,
489 U.S. 426, 109 S.Ct. 1225 (1989)................................................................15

*Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*,
809 F.2d 483 (8th Cir. 1987) ...........................................................................14

*United Food & Commercial Workers Union, Local 770 v. Official Unsecured Creditors Comm'n*,
173 B.R. 177 (9th Cir. BAP 1994)....................................................................15

*United Steelworkers of America v. Ormet Corp.*,
2005 WL 2000704 (S.D. Ohio Aug. 19, 2005)..................................................15

*Wong v. HSBC USA, Inc.*,
2010 WL 3154976 (S.D.N.Y. Aug. 9, 2010) .....................................................15

**STATUTES**

11 U.S.C. §1113.................................................................................... passim

11 U.S.C. §1113(c) ...................................................................................9, 10

11 U.S.C. §1113(f)..............................................................................9, 10, 17

45 U.S.C. §151a ............................................................................................2

45 U.S.C. §155...........................................................................................17

45 U.S.C. §156...........................................................................................17

**OTHER AUTHORITY**

*The Railway Labor Act*, (Michael E. Abram et al. eds., 2d ed. 2005) ......................................5, 14

## <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

Appellant, Allied Pilots Association ("**APA**"), appeals from the Bankruptcy Court's resolution of a single question of law: whether a bankruptcy court has the authority to entertain a motion under section 1113 of title 11, United States Code (the "Bankruptcy Code"), to reject a Railway Labor Act ("**RLA**") collective bargaining agreement that has reached its amendable date.  APA claims that the answer to this question is "no," and it asserts that this issue is an open one in this Circuit.  APA Br. at 12.  APA is incorrect on both counts; the decision below rejecting APA's argument was controlled by authority from both the Second Circuit and the Supreme Court and was properly decided.

APA sought below to forestall an anticipated motion by American Airlines, Inc. ("**American**") under section 1113 to reject the parties' collective bargaining agreement (the "**CBA**" **or** "**Agreement**"), by seeking a declaratory judgment on the theory that the Agreement had "expired" in 2008 when it reached its amendable date and that therefore no agreement existed for the Bankruptcy Court to reject.  As the Bankruptcy Court noted, however, the Second Circuit has held—explicitly, unambiguously, and *as a matter of law*—that "a collective bargaining agreement between a carrier subject to [the RLA] and its employees or their union . . . hardly ever expires,"[1] and that the RLA purposefully "prolong[s] agreements . . . *regardless* of what [the agreements might] say as to termination . . . .  *Only after the parties have fully exhausted the* [*RLA's statutory*] *dispute resolution and re-negotiation processes does a CBA expire*, freeing the parties from their contractual obligations and the RLA's rules governing the preservation of the status quo."  Mem. Dec. at 14-15 (quoting *Manning v. American Airlines,*

---

[1] Memorandum of Decision, *Allied Pilots Ass'n v. AMR Corp. et al.*, Adv. Pro., No. 12-01094 (Bankr. S.D.N.Y.), dated Apr. 20, 2012 (ECF No. 27) ("**Mem. Dec.**"), at 15 (quoting *Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA (In re Northwest Airlines)*, 483 F.3d 160, 167 (2d Cir. 2007)).

*Inc.*, 329 F.2d 32, 34 (2d Cir. 1964) and *In re Northwest Airlines*, 483 F.3d at 167)) (emphases added).

As APA acknowledges, APA and American have not yet "fully exhausted the [RLA's statutory] dispute resolution and re-negotiation processes." *See* Complaint for Expedited Declaratory Relief, *In re AMR Corp.*, No. 11-15463, Bankr. S.D.N.Y., dated Feb. 28, 2012 (ECF No. 1481) ("**Complaint**") ¶¶ 11-15.  As a matter of law, then, the Agreement has not "expired," and the parties have not yet been "free[d] from their contractual obligations."

This "evergreen" quality of RLA collective bargaining agreements is no accident; it is, in fact, central to the RLA's design.  Congress listed as its very first purpose in passing the RLA the desire "[t]o avoid any interruption of commerce or to the operation of any carrier engaged therein."  45 U.S.C. §151a.  Thus, "the very purpose [of the RLA's rules respecting bargaining agreements] is to stabilize relations [between management and labor] by artificially extending the lives of agreements for a limited period regardless of the parties' intentions."  *Manning*, 329 F.2d at 34.  By keeping CBAs alive throughout the "virtually interminable RLA [re-]negotiation procedures,"[2] the RLA creates "time for tempers to cool, helps create an atmosphere in which rational bargaining can occur, and permits the forces of public opinion to be mobilized in favor of a settlement without a strike or lockout." *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 150, 90 S.Ct. 294, 299 (1969).

These principles of law are embodied in numerous decisions from this Court, from the Second Circuit, from other courts of appeals, and from the Supreme Court.  They are also fundamentally incompatible with APA's theory of the case.  The decision below was correct and should be affirmed.

---

[2] *Consol. Rail Corp. v. Bhd. of Maint. of Way Employees*, 792 F.2d 303, 304 (2d Cir. 1986).

**ISSUE PRESENTED**

Does a United States Bankruptcy Court possess the authority to grant a debtor's motion brought pursuant to 11 U.S.C. § 1113 to reject a collective bargaining agreement, where that agreement has not terminated or expired but rather has become amendable pursuant to the terms of the Railway Labor Act?

**STANDARD OF REVIEW ON APPEAL**

"A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*.  The dismissal of a complaint is a legal conclusion which is subject to *de novo* review."  *Wong v. HSBC USA, Inc.*, 2010 WL 3154976, at *4 (S.D.N.Y. Aug. 9, 2010).

**STATEMENT OF THE CASE AND OF THE FACTS**

1.  **The Agreement became amendable in 2008.**  Since 1963, American and APA have been parties to a series of interative CBAs governing the terms and conditions of employment for the Company's pilots.  The Agreement was most recently amended in 2003.  Section 26.C of the Agreement provides as follows with respect to its duration:

> This Agreement shall become effective May 1, 2003 . . . and shall continue in full force and effect until May 1, 2008, and shall renew itself without change until each succeeding May 1 thereafter, unless written notice of intended change is served in accordance with Section 6 . . . of the Railway Labor Act . . . by either party hereto at least sixty (60) days prior to May 1, 2008, or May 1 of any subsequent year.

The parties agree that notices of intended change were properly served within the time limits specified in Section 26.C.  Complaint ¶ 10.

2.  **APA filed the Complaint before American filed its motion seeking contract rejection.**  American sought relief under Chapter 11 on November 29, 2011.  Thereafter, on February 1, 2012, American made a set of proposals to APA with the hope and expectation that the parties could reach agreement on new terms of employment and thereby make a section 1113

-3-

motion unnecessary.  American advised APA, however, that in the absence of an agreement, its proposals would serve as a precursor to a motion to reject the Agreement under section 1113.

As negotiations were getting underway, APA filed the Complaint seeking a declaratory judgment that section 1113 was inoperative because the Agreement had "expired" in 2008. Negotiations proved unsuccessful and, on March 27, 2012, American filed its section 1113 motion.  The parties are awaiting a decision on that motion after a lengthy evidentiary hearing.[3]

**3.   The Bankruptcy Court dismissed the Complaint based on controlling authority.**

While the section 1113 proceedings were underway, the Bankruptcy Court dismissed the Complaint in its Memorandum of Decision dated April 20, 2012.  The Bankruptcy Court carefully examined the case law from this Court, the Second Circuit, and courts around the country, and rejected APA's assertion that the Agreement had "terminated" in 2008.

More specifically, the Bankruptcy Court concluded that: (a) because the RLA "abhors a contractual vacuum,"[4] "a collective bargaining agreement between a carrier subject to the RLA and its employees or their union . . . hardly ever expires"[5]; (b) CBA "expiration" only occurs once "the parties have fully exhausted the [RLA's] dispute resolution and re-negotiation processes,"[6] something APA acknowledges has not happened here; and (c) this is true as a matter of law, *i.e.*, that the purpose of the RLA "is to prolong agreements subject to its provisions *regardless of what they say as to termination*."[7]

---

[3] The parties have reached a tentative agreement and the pilots are engaged in a ratification process.

[4] Mem. Dec. at 18 (quoting *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1398 (7th Cir. 1990)).

[5] *Id.* at 15 (quoting *Northwest Airlines*, 483 F.3d at 167).

[6] *Ibid.* (quoting *Northwest Airlines*, 483 F.3d at 167).

[7] *Id.* at 14 (quoting *Manning*, 329 F.2d at 34 (emphasis added)).

The Bankruptcy Court also properly rejected APA's argument that the Agreement's "termination" was the necessary result of the specific language the parties had used in Section 26.C. The Bankruptcy Court noted that the parties had not, in fact, used the word "terminate" or expressed that intention in any equivalent words, or otherwise indicated any desire to have the agreement cease to operate on any particular date. Rather, Section 26.C merely provided for automatic annual renewal for a full year under certain circumstances not present here; the clause says nothing about agreement "termination" if those circumstances do not occur.

That was no oversight; as the court noted, in crafting Section 26.C, the parties had used an "unremarkable" formula routinely used in the airline industry, one numerous courts, including the Second Circuit, had held to make such agreements *amendable* at a given date rather than to terminate them. Mem. Dec. at 22 (citing *The Railway Labor Act* 376-77 (Michael E. Abram et al. eds., 2d ed. 2005)). Indeed, this language, the court observed, was comparable to those used by parties in the long line of cases in which agreements were "prolonged" by the RLA rather than terminated,[8] and fundamentally *unlike* the language used in the cases relied upon by APA, such as *Air Line Pilots Ass'n, International v. Pan American World Airways, Inc*., 600 F. Supp. 746 (E.D.N.Y. 1985). In *Pan American*, the contract specified that the agreement would "*terminate* in all respects at 2400 hours on December 31, 1984" and the company "explicitly waiv[ed] any and all rights whatsoever to claim that any of the [relevant] revisions [would] remain in effect after 2400 hours on December 31, 1984." *Id.* at 748 (emphasis added). The Bankruptcy Court held that no comparable language exists in the Agreement.[9]

---

[8] Mem. Dec. at 22 (citing *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 809 F.2d 483, 484 (8th Cir. 1987) and *EEOC v. United Air Lines*, 755 F.2d 94, 97 (7th Cir. 1985)).

[9] As the Seventh Circuit has noted, "[t]here is a difference between providing that a contract shall lapse at a given date and that after that date it shall be subject to amendment in accordance with specified procedures." *EEOC v. United Air Lines*, 755 F.2d at 99.

APA thereafter sought permission to appeal directly to the Second Circuit, bypassing appeal to this Court.  The Bankruptcy Court denied that motion.

## ARGUMENT

**I.      Under Controlling Precedent, RLA Collective Bargaining Agreements Do Not Terminate Until the Act's Bargaining Procedures Have Been Exhausted**

The central thesis of APA's appeal is that the Agreement "was no longer in effect as a matter of contract after May 1, 2008," and that thus there could be no contract for the Bankruptcy Court to reject.  APA Br. at 11.  The Second Circuit has repeatedly rejected that proposition.

The Second Circuit most recently addressed the duration of RLA collective bargaining agreements in *In re Northwest Airlines*, 483 F.3d 160 (2d Cir. 2007), which arose from Northwest Airlines' own bankruptcy.  After the labor agreement between Northwest and its flight attendants had been rejected under section 1113, the flight attendants threatened to engage in a series of "quickie" strikes in protest.  The company sought and obtained from this Court an injunction prohibiting this conduct, and the Second Circuit affirmed that injunction.  As is the case here, the Northwest flight attendants were working prior to contract rejection under the terms of an agreement that had reached its "amendable" date.

In affirming the strike injunction, the Second Circuit began its analysis by determining the impact contract rejection under section 1113 had on the parties' RLA-based obligations.  The court observed:

> The RLA "abhors a contractual vacuum." *See Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1398 (7th Cir. 1990). Accordingly, a collective-bargaining agreement between a carrier subject to the RLA and its employees or their union (we use the two terms interchangeably) hardly ever expires. *See Manning v. Am. Airlines, Inc.*, 329 F.2d 32, 34 (2d Cir.1964) ("The effect of § 6 [of the RLA] is to prolong agreements subject to its provisions regardless of what they say as to termination."). Rather, once a CBA becomes "amendable," the carrier and the union are bound by statute to embark upon an "almost interminable" re-negotiation process. *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 149, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). During the pendency of this re-negotiation process, the RLA "obligate[s] [the parties] to maintain the status quo." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) . . . .
>
> Only after the parties have fully exhausted the dispute resolution and re-negotiation processes does a CBA expire, freeing the parties from their contractual obligations and the RLA's rules governing the preservation of the status quo. *Cf. Pan Am. World Airways v. Int'l Bhd. of Teamsters, Chauffeurs & Helpers of America*, 894 F.2d 36 (2d Cir.1990).

483 F.3d at 167.

Given this statutory framework, the court expressly held, "Northwest's rejection of its CBA after obtaining court authorization to do so under 11 U.S.C. §1113 abrogated . . . the *existing collective-bargaining agreement between* [*the flight attendants' union*] *and Northwest*." *Id.* at 169 (emphasis added). The bankruptcy court rejected the "existing collective-bargaining agreement" despite the fact that it had reached its amendable date.

APA has attempted to diminish the force of the Second Circuit's conclusion in *Northwest* by characterizing it as dictum, suggesting that the court inadvertently strayed into an issue that the parties had not raised. APA Br. at 11-12. This is not true.

First, the "amendable" status of the "existing collective-bargaining agreement" between Northwest and its flight attendants was noted repeatedly by the parties and by their amici.[10]  It is true that none of the parties, and none of the amici, argued that an agreement in the "amendable" state has "terminated" as APA now claims, but it is hard to see how this helps APA.  There has long been a consensus among both employers *and* labor organizations that amendable RLA agreements continue in place at least until the RLA re-negotiation processes have been completed.[11]  That consensus view can hardly be used as *support* for APA's idiosyncratic view to the contrary, or as a reason to doubt the centrality of the issue to the *Northwest* court's disposition there.

Second, even if the *parties* had not raised the issue, both this Court and the Second Circuit understood that "resolution of the question was necessary for the decision of the case"[12] and thus both discussed the question at some length in their respective opinions.  This Court expressly acknowledged that it needed to address the question "because it raises the issue of what collective bargaining agreement was being rejected through the section 1113 Order."  *In re*

---

[10] *See, e.g.*, Brief of Intervenor-Appellant Air Line Pilots Association, International, *In re Northwest Airlines*, 483 F.3d 160 (2d Cir. 2007), filed Oct. 16, 2006, *available at* 2006 WL 5050358, at \*8, \*27 n.14; Brief of Proposed Intervenor/Amicus Curiae the Official Committee of Unsecured Creditors of Northwest Airlines Corporation, et al., *In re Northwest Airlines*, 483 F.3d 160 (2d Cir. 2007), filed Nov. 9, 2006, *available at* 2006 WL 5050353, at \*8-9 & n.6.

[11] Moreover, as the court below correctly observed, "unions in other cases have endorsed the proposition that a collective bargaining agreement under the RLA continues notwithstanding the arrival of its amendable date."  Mem. Dec. at 16 n.8 (citing Brief of Air Line Pilots Ass'n, *Northwest Airlines Corp. v. AFA*, Adv. Proc., No. 06–01679 (Bankr. S.D.N.Y.), filed Aug. 8, 2008, at 14 as arguing that "RLA collective bargaining agreements do not expire; they become subject to amendment under the processes of Section 6 of the RLA," and *In re Mesaba Aviation, Inc.*, 341 B.R. 693, 710 n.18 (Bankr. D. Minn. 2006) as discussing the testimony of AFA's General Counsel that collective bargaining agreements under RLA "do not have a fixed term at the close of which they are extinguished in legal effectiveness. Rather, they identify a starting date and an 'amendable date.'").

[12] *See Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011).

*Northwest Airlines Corp.*, 349 B.R. 338, 348 n.4 (S.D.N.Y. 2006).  For its part, the Second

Circuit expressly "h[e]ld that Section 2 (First) of the Railway Labor Act forbids an immediate

strike when a bankruptcy court *approves a debtor-carrier's rejection of a collective-bargaining*

*agreement* that is subject to the Railway Labor Act and permits it to impose new terms."  483

F.3d at 163 (emphasis added).[13]  A necessary predicate to this holding is that "a debtor-

carrier's . . . collective-bargaining agreement" existed to reject—precisely the proposition with

which APA now quarrels.  This was not dictum.

      More importantly, however, trying to minimize the importance of this holding in

*Northwest* is wasted effort for APA because this aspect of that decision merely reinforced *prior*

Second Circuit decisions.  In *In re Ionosphere Clubs, Inc*., 922 F.2d 984 (2d Cir. 1990), for

example, the court faced the question whether the automatic stay provision of the bankruptcy

code stayed arbitrations under the carrier-debtor's existing collective bargaining agreements.

The Second Circuit answered that question in the negative, holding that the employer had a

continuing obligation to arbitrate while in bankruptcy unless it had first complied with the

contract-rejection procedures of section 1113.  It reached this conclusion notwithstanding the

fact that (like the Agreement here) the debtor's CBA had passed its amendable date.  Section

1113(f), the court noted, expressly prevents an employer from "unilaterally terminat[ing] or

alter[ing] any provisions of a collective bargaining agreement prior to compliance with the

provisions of this section."  *Id.* at 989.  Staying arbitrations for which the agreement otherwise

---

[13] APA places controlling weight on a phrase appended to this explicit holding—that the
"propriety" of the bankruptcy court's rejection decision was "not on appeal."  The phrase does
not help APA.  Although no party disputed the question whether Northwest had made the
necessary showings necessary to obtain rejection under 11 U.S.C. §1113(c), the court's explicit
holding made clear that the "existing" status of the pre-rejection collective bargaining agreement
was a central element of its conclusion.

provides, the court held, would amount to a "termination or alteration" of the relevant provisions of an agreement.  *Id.* at 990-91.

This holding *necessarily* rests on the proposition that the only mechanism for changing an agreement in its "amendable" state is section 1113.  It is thus incompatible with APA's basic premise that section 1113 is irrelevant if the agreement has reached that date.  If, as *Ionosphere* holds, section 1113(f) prevents any changes to the terms of an RLA collective bargaining agreement *when it is in its amendable state* (unless the employer complies with the contract-rejection procedures of section 1113(c)), then *necessarily* the contract-rejection procedures of section 1113(c) apply to amendable agreements.  This dispositive holding in *Ionosphere* barely merits a mention in APA's brief.

The decision below was also consistent with *Manning v. American Airlines, Inc.*, 329 F.2d 32 (2d Cir. 1964), the one relevant case that receives extended treatment in APA's brief. *Manning* involved two separate labor agreements—a comprehensive CBA with a duration clause almost identical to the one in the Agreement,[14] and a second, issue-specific agreement regarding the employer's obligation to continue deducting union dues from employee pay checks—a so-called "dues check-off" provision.  As to this second single-issue agreement, the parties had explicitly provided that it would "continue in full force and effect until April 30, 1963, [but would be] subject to renewal thereafter only by mutual agreement of the parties hereto."  *Id.* at 33.  After that date passed, American ceased to deduct employee dues, the union sued, and the district court entered an injunction forcing the company to resume doing so.

---

[14]  The provision in *Manning* said that the agreement would "continue in full force and effect until April 30, 1963 and shall renew itself without change until each successive April 30 thereafter unless written notice of intended change is served in accordance with Section 6, Title I, of the Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to April 30 in any year after April 30, 1962."  *Id.* at 33.

On appeal, American argued that the special duration language connected to the dues check-off provision meant that this specialized provision did not continue in force after the specified date but rather had terminated, and with it ended the obligation to withhold union dues. Although the Second Circuit recognized that it might theoretically be useful to except agreements dealing with "unusual situations of short duration" from the general rule that amendable agreements remain intact under the RLA, it "pass[ed] [on that] question" because it found it unnecessary to resolve it; in this instance, "the argument [that the language expressed such a desire] puts more strain on the words of the check-off agreement than these will bear." *Manning*, 329 F.2d at 34.  That is, even if parties could theoretically craft language sufficiently clear to take such a single-purpose agreement outside the normal "evergreen" rule of contract duration (a question on which the court offered no opinion), the parties had failed to express adequately that desire.  The court acknowledged that this conclusion meant treating identically "two intentionally dissimilar provisions," *i.e.*, treating both of the differently-worded provisions as evergreen agreements extended by the RLA, but the court was untroubled by that result precisely because "the very purpose of §6 is to stabilize relations *by artificially extending the lives of agreements for a limited period regardless of the parties' intentions*."  *Id*. (emphasis added).

Thus, *Manning* does not help APA and, indeed, only supports the decisions in *Northwest* and *Ionosphere*, and the decision below.  *Manning* holds that CBAs subject to the RLA continue in force after they reach an amendable or "termination" date *regardless* of what the parties say as to termination—that "[t]he effect of §6 is to prolong agreements subject to its provisions regardless of what they say as to termination."  While APA reads the case as license for parties

to except agreements from the operation of this rule by contract, that is precisely the question on which the Bankruptcy Court "pass[ed]."

But even if one were to assume, *arguendo*, that the case could be read as endorsing (or at least leaving some hope for) the view that parties could contract around the evergreen rule, such a holding would not help APA.  The *Manning* court observed that *even the language used by the parties in that case* would have been insufficient to accomplish such a task.  There, the parties identified a specific date on which the check-off provision would die, and stated that the provision would not be revived absent an agreement by the parties to have it do so.[15]  APA cannot point to anything remotely like this language in Section 26.C.  Rather, the parties here used language that the Second Circuit has repeatedly held merely prolongs the CBA until the RLA re-negotiation process has concluded.

APA also claims that *Manning* should be read for the proposition that *agreements* expire when they reach their amendable dates, but the duty to honor the terms *contained* in the agreements is held in place by statute.  As set out above, the Second Circuit has disagreed, repeatedly, as did the court below; the RLA "artificially extend[s] the lives of [the] *agreements*" themselves.  *Manning*, 329 F.2d at 34.  The Seventh Circuit explicitly rejected precisely the sort of results-oriented sophistry APA attempts here:

> We find too metaphysical for our taste the argument that the agreement terminates on the date specified in the contract even though the employer cannot on termination make any changes. What he cannot change, after all, is the terms of the contract; realistically he continues subject to it, notwithstanding the arrival of the "termination" date; realistically, the contract remains in force.

---

[15] The language the court held insufficient, in the view of the district court, "need[ed] no interpretation because it was clear on its face"; it unambiguously required termination of that provision on a date certain.  *Manning v. American Airlines, Inc.*, 221 F. Supp. 301, 304 (S.D.N.Y. 1963).

*EEOC v. United Air Lines*, 755 F.2d at 97.

If anything, the Second Circuit's decisions on point may have *understated* the post-amendable vitality of CBAs covered by the RLA.  In *Brotherhood of Railway & Steamship Clerks v. Florida East Coast Railway*, 384 U.S. 238, 86 S.Ct. 1420 (1966), the Supreme Court discussed the continuing vitality of a CBA *even after* the RLA's re-negotiation processes has been completed and *after* the union has begun a lawful strike.  The Court held that even under these circumstances, *the agreement remains valid and in place* except as to specific changes the employer is entitled to make because it has exhausted the RLA bargaining procedures on those topics.  The Court explained that RLA "collective bargaining agreements are the product of years of struggle and negotiation; they represent the rules governing the community of striking employees and the carrier.  [A] strike represents only an interruption in the continuity of the relation.  Were a strike to be the occasion for a carrier to tear up and annul, so to speak, the entire collective bargaining agreement, labor-management relations would revert to the jungle." *Id*. at 246-47.  Accordingly, the carrier is not free to "annul . . . the entire collective bargaining agreement" but can make only those changes that had been subject to RLA bargaining, and those additional changes that were "reasonably necessary" to continue to operate in the strike.  "*The carrier must* [*otherwise*] *respect the continuing status of the collective bargaining agreement* . . . ." *Id*. at 248 (emphasis added).

Arrayed against APA, then, is a consistent line of authority from the Second Circuit and the Supreme Court rejecting the view that RLA CBAs terminate when they reach their amendable dates.  But that is not all.  The Seventh Circuit reached that same conclusion in *United Air Lines*, 755 F.2d at 99 ("service of the [Section 6] notice is the mode of amendment, implying that what is not sought to be changed continues in effect.  November 1 really isn't a termination date at all; it is the date before which no changes can be made."), as did the Eighth

-13-

Circuit in *TWA v. IFFA*, 809 F.2d 483, 490 (8th Cir. 1987) (a "continuous unless" duration clause virtually identical to the Agreement did not "terminate" the CBA because "the agreement at issue has not expired"), *aff'd without op. by equally divided court*, 485 U.S. 175, 108 S.Ct. 1101 (1988).[16]

     That too is the position taken by the leading (indeed, only) RLA treatise:

> Collective bargaining agreements under the RLA typically do not terminate on specified dates; instead, they usually set forth a date on which they become "amendable" if a party serves a timely notice of intent to change the agreement under Section 6 of the RLA.  Under the NLRA, in contrast, agreements typically expire on a specified date . . .

*The Railway Labor Act* 13 (Michael E. Abram et al. eds., 2d ed. 2005).[17]

---

[16] The Ninth Circuit's decisions in *IAM v. Aloha Airlines*, 776 F.2d 812 (9th Cir. 1985), and *IAM v. Reeve Aleutian Airways*, 469 F.2d 900 (9th Cir. 1972), may be consistent with APA's theory, but they are incompatible with Second Circuit authority.  *Aloha* held that arbitration is no longer available once the labor agreement reaches its amendable date and thus "terminates," but in *Ionosphere*, the Second Circuit held that the arbitration process continued *after* the amendable date *and* following a bankruptcy filing.  *Aloha* has also been roundly criticized in other courts around the country.  *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*, 863 F.2d 891 (D.C. Cir. 1988) ("*Aloha* appears to ignore the purposes behind the RLA's bifurcated dispute resolution procedure . . . . [T]he consequence of the *Aloha* rule is that after the filing of a § 6 notice and the expiration of a bargaining agreement, no dispute between the parties can proceed along the track devised by Congress for 'minor' disputes."); *Miklavic v. USAir, Inc.*, 21 F.3d 551, 554 (3d Cir. 1994) ("to follow *Aloha* would mean that every dispute, no matter how firmly based in the existing but expired contract and no matter how insignificant, would become a major dispute subject to federal court jurisdiction.  The *Aloha* rule upset [the] settled law governing post-expiration disputes that the mere filing of a section 6 notice does not turn a minor dispute into a major one.").  Indeed, at least one court within the Ninth Circuit has expressed doubt as to whether these cases remain good law even in that jurisdiction.  *See Alaska Airlines v. Int'l Ass'n of Machinists and Aerospace Workers*, 2005 WL 1330976 (W.D. Wash. June 2, 2005) (*Aloha* was no longer controlling law after the Supreme Court's decision in *Consolidated Rail Corp. v. RLEA*, 491 U.S. 299, 109 S.Ct. 2477 (1989) clarifying the definition of a major and minor dispute).

[17] The treatise is written by both management and union lawyers who belong to the Railway and Airline Labor Law Committee of the Section of Labor and Employment Law, American Bar Association.

## II.   Cases Decided under the NLRA Are Not Instructive

Because the relevant RLA cases almost uniformly reject the rule APA proffers here, the

Union looks for support in cases decided under the National Labor Relations Act ("NLRA").  No

such support exists.

APA suggests that the Court should adopt uncritically the results reached in a handful of

NLRA decisions[18] that would support its view on the rejection of "expired" contracts, but the

Supreme Court has repeatedly cautioned that "[e]ven rough analogies [between the NLRA and

the RLA] must be drawn circumspectly with due regard for the many differences between the

statutory schemes."  *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S.

426, 440, 109 S.Ct. 1225, 1233 (1989) (*quoting Trainmen v. Jacksonville Terminal Co.*, 394 U.S.

369, 383, 89 S.Ct. 1109, 1118 (1969)).

---

[18] The NLRA cases themselves reflect deep divisions.  *Compare In re Karykeion, Inc.*, 435 B.R. 663, 674 (Bankr. C.D. Cal. 2010) ("Section 1113's language and purpose indicate that it allows a debtor to terminate or modify its ongoing obligations to its organized workforce, whether those arise as a result of a current or expired CBA."); *United Food & Commercial Workers Union, Local 770 v. Official Unsecured Creditors Comm'n*, 173 B.R. 177, 184 (9th Cir. BAP 1994) ("the basic purpose of § 1113 is meant to grant ultimate jurisdiction to the bankruptcy court to accept, modify, or otherwise alter or terminate the status quo ante rights and obligations between a debtor employer and its employees, whether they are established under a currently existing CBA or pursuant to the [NLRA]."); *United Steelworkers of America v. Ormet Corp.*, 2005 WL 2000704, at *2 (S.D. Ohio Aug. 19, 2005) (rejecting argument that section 1113 is inapplicable to expired CBAs; "§ 1113 does not use the term 'executory' in describing what type of collective bargaining agreements can be rejected"); *Accurate Die Casting Co.*, 292 N.L.R.B. 982, 988 (1989) (section 1113 does not refer to "executory" contracts and period when the contract "continues in effect . . . includes a period when its replacement is being negotiated and in which no impasses has been reached"); *with In re Charles P. Young Co.*, 111 B.R. 410, 413 (Bankr. S.D.N.Y. 1990) (rejection of a collective agreement under section 1113 is moot if the agreement expires prior to a hearing on rejection); *In re San Rafael Baking Co.*, 219 B.R. 860, 864 (9th Cir. BAP 1998) (in the context of a claims hearing, only the NLRB had the authority to interpret the NLRA and bankruptcy court did not have authority to alter an expired agreement); *In re Sullivan Motor Delivery, Inc.*, 56 B.R. 28 (Bankr. E.D. Wisc. 1985) (section 1113 could not be utilized to reject an expired agreement).

Here, the "differences between the statutory schemes" are profound and go directly to the heart of the issues raised in this matter.  As noted *supra*, the primary purpose of the RLA is "to settle strikes and avoid interruption to commerce."  *In re Northwest Airlines*, 349 B.R. at 352 (*quoting Burlington N. R.R. Co.*, 481 U.S. 429, 451, 107 S.Ct. 1841, 1854 (1987)) (collecting cases).  That is why the RLA ties the bargaining parties to a process that can seem interminable and forestalls resort to self-help of any sort until that process has fully run its course.  The RLA leaves that determination—whether the parties have exhausted the prospects of a negotiated agreement in the absence of self-help—to public officials, the National Mediation Board and, ultimately, to the President.

The relevant NLRA policies and procedures are irreconcilable with those of the RLA. "[T]here is no general federal anti-strike policy" under the NLRA, *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 225, 82 S.Ct. 1328, 1344 (1962), and no federal agency is empowered to determine in the first instance whether either party has the right to engage in self-help; the parties themselves make the determination whether an impasse has been reached.

These differences have profound consequences as they relate to the NLRA-rule APA seeks here.  Even if the Court were to assume that the cases holding that an NLRA-covered employer/debtor cannot invoke the procedures of section 1113 after its union contract has expired were correctly decided, the NLRA employer still has substantial control over its destiny. It can bargain with its unions, determine for itself whether impasse has been reached, and, when it has, it can *unilaterally* implement the changes in contract terms it needs to survive and reorganize successfully.  This self-enforcing process leaves the "post-expiration" NLRA employer largely in control of its own fate.

Applying this NLRA-based rule here, however, would effectively deny the comparably-situated RLA-covered employer-debtor *any* mechanism for addressing a crisis arising from uncompetitive labor costs.  It would be unable to invoke section 1113 to obtain changes that are necessary for its reorganization—even those necessary to prevent imminent liquidation—because its agreement would supposedly have "expired."  Simultaneously, it would be prevented by the RLA's "status quo" provisions[19]—which APA insists apply with full force—and by section 1113(f) of the Bankruptcy Code from declaring impasse unilaterally and implementing its bargaining proposals as could the NLRA-covered employer.  Only the NMB (an agency with no expertise or role in the reorganization of debtors) could grant the employer a "release" from bargaining and allow it to engage in self-help, and even if it did so, the employer could not take *any* unilateral action until the statutory 30-day post-release "cooling off period" had expired.  *See* 45 U.S.C. § 155.  During that statutorily-imposed period, the debtor could well slip into oblivion.

Congress could not have contemplated such haphazard differential treatment of similarly situated debtors.  According to APA, an RLA-covered employer would be able to move to reject a collective bargaining agreement *immediately* after it has been signed—before the ink is dry and before the employees have received any of the benefits of their bargain—but an employer like American, one that has tried for years after its contract reached its amendable date to achieve a new consensual agreement that would make a rejection motion unnecessary, would be penalized for waiting.  The rule would thus give RLA employers a powerful incentive to resort to Chapter 11 and section 1113 as a *first* option, before its contracts became amendable, rather than encouraging the consensual resolution of bargaining disputes without court involvement.  No policy would be furthered by embracing such a bizarre result.

---

[19] 45 U.S.C. §§ 155-156.

Section 1113 exists to provide a lifeline to employers when their labor contracts are preventing them from reorganizing successfully.  If APA were correct in its construction of the statute, RLA employers would be effectively denied resort to the statute once their agreements become amendable, but no possible federal labor law or bankruptcy law policy would be furthered by such a result.  Not only has APA failed to identify any statutory language or case law that might support such a construction, they have failed to articulate any rational purpose Congress might have thought it was furthering by adopting such a nonsensical construction.  The Bankruptcy Court properly dismissed APA's Complaint, and that decision should be affirmed.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

The Bankruptcy Court properly dismissed APA's Complaint, and that decision should be affirmed.

Dated: New York, New York
      July 13, 2012

WEIL, GOTSHAL & MANGES LLP

By: /s/ Stephen Karotkin
       Stephen Karotkin
       A member of the firm

*Harvey R. Miller*
*Stephen Karotkin*
*Alfredo R. Pérez*
*Lawrence J. Baer*
    *Of Counsel*

767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

and

*John J. Gallagher*
*Neal D. Mollen*
*Margaret H. Spurlin*
    *Of Counsel*

PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

*Attorneys for AMR Corporation and*
*American Airlines, Inc. - Appellees*